**Claudette P. JOHNSON,
Petitioner–Appellant,**

v.

**UNITED STATES RAILROAD
RETIREMENT BOARD,
Respondent–Appellee.**

No. 90–5455.

United States Court of Appeals,
Eleventh Circuit.

March 11, 1991.

Gayle Dauscher Clark, Melbourne, Fla., for petitioner-appellant.

Steven A. Bartholow, Karl T. Blank, U.S. R.R. Retirement Bd., Chicago, Ill., for respondent-appellee.

Before FAY and COX, Circuit Judges, and HENDERSON, Senior Circuit Judge.

FAY, Circuit Judge:

Petitioner-appellant Claudette P. Johnson petitions this court to review the decision of the Railroad Retirement Board which terminated her widow's annuity benefits pursuant to the Railroad Retirement Act of 1974 ("Act or "Railroad Retirement Act"), codified as amended at 45 U.S.C. §§ 231–231v (1988). Because we find that the Board erroneously interpreted the Act, we reverse.

## BACKGROUND

Mrs. Johnson was born on August 27, 1938. In 1967, she married Stewart M. Johnson, an employee of the Clinchfield Railroad Company. Their son, Stewart M. Johnson II, was born on February 1, 1972. Mrs. Johnson's husband was killed on the job on August 24, 1977. On September 1, 1977, Mrs. Johnson filed an application for annuity benefits as a survivor of a railroad employee under the Railroad Retirement Act. At the time she filed her application, Mrs. Johnson was thirty-nine years of age, and she was not disabled. She was awarded an annuity under 45 U.S.C. § 231a(d)(1)(ii). After nearly ten years of receiving annuity benefits, on August 21, 1987, Mrs. Johnson was notified by the Railroad Retirement Board's Bureau of Re-

tirement Claims that a portion of her annuity ("tier I") would terminate the month in which her son attained age sixteen, January, 1988. Mrs. Johnson continued to receive the other "supplemental" portion of her annuity ("tier II") until her son reached age eighteen.

Mrs. Johnson requested reconsideration of the Bureau's decision to reduce the benefits she had been receiving. The Bureau informed Mrs. Johnson that it adhered to its original decision. Mrs. Johnson appealed to the Board's Bureau of Hearings and Appeals. The appeals referee affirmed the Bureau of Retirement Claims' earlier decision. Subsequently, Mrs. Johnson appealed the decision of the Bureau of Hearings and Appeals to the three member Railroad Retirement Board. The Board affirmed and adopted the opinion of the appeals referee; however, one Board member filed a dissenting opinion. Mrs. Johnson subsequently petitioned this court to review the decision of the Board.

### DISCUSSION

■ This court has jurisdiction to review Board decisions pursuant to section 8 of the Railroad Retirement Act (codified as amended at 45 U.S.C. § 231g), which incorporates by reference the provisions pertaining to judicial review set forth in section 5(f) of the Railroad Unemployment Insurance Act (codified as amended at 45 U.S.C. § 355(f)), an Act also administered by the Board (sections 1(r) and 12; 45 U.S.C. §§ 351(r), 362). The well established standard of review in this circuit is that we affirm the Board if its factual finding is supported by substantial evidence and its decision is not based upon an error of law. *George v. Railroad Retirement Bd.*, 738 F.2d 1233, 1235 (11th Cir.1984); *Railroad Concrete Crosstie Corp. v. Railroad Retirement Bd.*, 709 F.2d 1404, 1407 (11th Cir.1983); *Kurka v. United States R.R. Retirement Bd.*, 615 F.2d 246, 249–50 (5th Cir.1980).[1] Although we are bound by the Board's finding of fact if supported by substantial evidence, we are by no means

bound in determining the correctness of the Board's legal conclusions. *Patton v. Railroad Retirement Bd.*, 313 F.2d 434, 437 (5th Cir.1963).

■ The Railroad Retirement Act of 1974, codified as amended at 45 U.S.C. § 231a(d)(1)(ii) (1988), provides that a widow of a deceased railroad employee is entitled to annuity payments if she has in her care a child of the employee under age eighteen who is also entitled to an annuity. The section also provides that the amount of the annuity to which a widow is entitled is determined under 45 U.S.C. § 231c (1988). 45 U.S.C. § 231a(d)(1). Section 231c(f)(1) provides for the calculation of the tier I portion of annuity benefits; section 231c(g) provides for the calculation of the tier II portion.

Section 231c(f)(1) provides that the amount of the tier I annuity

> shall be in an amount equal to the amount ... of the ... mother's insurance benefit to which ... she would have been entitled under the Social Security Act [42 U.S.C. 301 et seq.] if such deceased employee's service as an employee ... had been included in the term "employment" as defined in that Act.

45 U.S.C. § 231c(f)(1) (1988) (brackets in original). Under the Social Security Act's own entitlement section, 42 U.S.C. § 402(g)(1) (1988), a widow in Mrs. Johnson's situation "shall (subject to subsection (s) of this section) be entitled to a mother's ... insurance benefit for each month, ... ending with the month preceding the first month in which ... no child of such deceased individual is entitled to a child's insurance benefit." Prior to 1981, under section 402(s)(1) a widow could receive social security benefits if her child were under age eighteen, the same age specified under the Railroad Retirement Act. *See Costello v. United States R.R. Retirement Bd.*, 780 F.2d 1352, 1354 (8th Cir.1985); 42 U.S.C. § 402(s)(1) (1976); 45 U.S.C. § 231a(d)(1)(ii) (1976). However, in 1981, Congress amended the Social Security Act

---

1. The Eleventh Circuit in *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

at 42 U.S.C. § 402(s)(1) to read, "[f]or the purpose[ ] of subsection [ ] ... (g)(1) ... of this section ..., a child who is entitled to child's insurance benefits under subsection (d) of this section ... who has attained the age of 16 ... shall be deemed not entitled to such benefits." Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97–35, § 2205, 95 Stat. 357 (amending section 402(s)(1)).

The tier II annuity provided under the Railroad Retirement Act is a supplemental annuity payable to survivors of deceased railroad employees. *See* 45 U.S.C. § 231c(g) (1988). Section 231c(g) provides the method of calculation of the tier II annuity. Prior to 1981, the tier II amount was calculated by multiplying the tier I annuity payable to the widow under section 231c(f) by 30 percent. 45 U.S.C. § 231c(g) (1976). However, in 1981, Congress amended section 231c(g), creating a completely new method of calculation.[2] Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97–35, § 1119(g), 95 Stat. 633 (amending section 231c(g)).

This tortuous walk through the Act results in a clear inconsistency. Though the Railroad Retirement Act explicitly entitles a widow in Mrs. Johnson's situation to receive tier I annuity benefits until her son attains the age of eighteen, the Social Security Act (to which the Railroad Retirement Act refers for calculation of the *amount* of the benefits) treats such an individual as not entitled to receive tier I annuity benefits once her child reaches age sixteen.

This case presents essentially the same issue previously addressed by the Eighth Circuit in *Costello v. United States R.R. Retirement Bd.*, 780 F.2d 1352 (8th Cir. 1985), namely, whether a widow whose youngest child was between the ages of sixteen and eighteen could continue to receive a tier I annuity. In *Costello*, the widow of a deceased railroad employee

challenged the Board's interpretation of the Railroad Retirement Act's widow's benefits provision, located at 45 U.S.C. § 231a(d)(1)(ii). The Board took the position that a widow whose minor child was between the ages of sixteen and eighteen was no longer entitled to an annuity. The court held that a widow with a child in her care under the age of eighteen was entitled to an annuity under the Act, and therefore reversed the Board's decision. *Costello*, 780 F.2d at 1356. Following *Costello*, the Board adjusted its interpretation of the Act, in an attempt to comply with the court's opinion. In the case before this court, Mrs. Johnson challenges the Board's current interpretation of the Act as it applies to her. In *Costello*, the Board's contention was that although a widow having in her care a child between the ages of sixteen and eighteen *was* entitled to both a tier I and a tier II annuity, the amendments to the Social Security Act reduced the *amount* of annuity to which she was entitled to zero. *Costello*, 780 F.2d at 1354. The court in *Costello* rejected the Board's interpretation of the Railroad Retirement Act. It held that the Board's position lacked a reasonable basis in law. *Id.* Therefore, it reversed the Board's determination denying benefits to Mrs. Costello. *Id.* at 1356.

The *Costello* court reasoned that the determination of the amount of an annuity to which a widow is entitled comprises two distinct steps. *Id.* at 1355. The initial step requires a determination of whether entitlement exists. *Id.* This determination is accomplished by referring to the entitlement section of the appropriate act. *Id.* (citing 45 U.S.C. § 231a (Railroad Retirement Act)); 42 U.S.C. § 402(f)(1) (Social Security Act)). If either act grants an entitlement, the second step is to refer to the social security regulations to determine the amount of benefits. *Id.* (citing 45 U.S.C.

---

2. In its brief, the Board made no attempt to explain how tier II is currently calculated under the amended section. However, according to counsel at oral argument, the Board's position, at the time of *Costello v. United States R.R. Retirement Bd.*, discussed *infra*, was that tier II

was calculated as a percentage of tier I payable. Counsel further explained that, currently, tier II is still determined as a percentage of the tier I that would have been payable if the widow were entitled to receive a tier I benefit.

§§ 231c(f)(1) (tier I), 231c(g)(1) (tier II); 20 C.F.R. § 404.342 (1985)) (footnote omitted).

The Railroad Retirement Act, not the Social Security Act, creates the entitlement to benefits for widows with children in their care. *See id.* The plain language of the Railroad Retirement Act entitlement provision, 45 U.S.C. § 231a(d)(1)(ii), provides an entitlement to benefits. *Id.* The meaning of the language of the provision expresses Congress's intent to maintain entitlement to benefits for widows whose youngest child is under age eighteen in spite of the changes to the Social Security Act. *See id.* If Congress had intended to change the entitlement requirements of the Railroad Retirement Act, it would have done so. *Id.* When it amended the Social Security Act, Congress also specifically amended subsections of the Railroad Retirement Act, including portions of the subsection in question (45 U.S.C. § 231a(d)(1)), but it did not change the entitlement provisions for widows with children under age 18. *See id.* (footnotes omitted). Moreover, the Railroad Retirement system has traditionally charged its employers and employees higher tax rates than under Social Security.[3] In light of this analysis, the *Costello* court held that widows with children under age eighteen were still entitled to tier I benefits, and, consequently tier II benefits. *See id.*

Following *Costello*, the Board issued a new legal opinion in an attempt to meet the concerns expressed by the court. (R.26, L–86–112). The Board perceived the concerns in *Costello* to be twofold: first, because the entitlement provision in the Railroad Retirement Act had not been amended, Congress still intended that widows such as Mrs. Johnson continue to receive some annuity benefit; second, because railroad employees have paid higher taxes than employees covered by the Social Security Act, Railroad Retirement Act benefits need not necessarily mirror Social Se-

curity benefits. The Board therefore interpreted the relevant provisions of the Act as follows: 1) a widow whose child was between the ages of sixteen and eighteen was entitled to an annuity; 2) the amount of the tier I annuity was determined by referring to 42 U.S.C. §§ 402(g)(1), 402(s)(1); 3) the amount of tier I annuity payable to such a widow was zero; *BUT,* the widow would continue to receive a tier II annuity until the child reaches age eighteen. The Board's rationale for the new interpretation was that because the tier II component of the Railroad Retirement Act had no corresponding provision in the Social Security Act (unlike tier I), and because the tier II benefits were apparently funded by the extra taxes that railroad employees paid, tier II benefits should continue regardless of whether tier I benefits were payable.

Since no facts are in dispute, the only issue in this case is whether the Board's post-*Costello* legal position is erroneous.[4] The Board's interpretation of the Railroad Retirement Act is entitled to deference, in that Congress has given the Board responsibility for administering the Act. *Costello*, 780 F.2d at 1354 (citation omitted). However, in this case, as well as in *Costello*, the Board was interpreting more than merely a provision of the Railroad Retirement Act; it was interpreting the Railroad Retirement Act, the Social Security Act, and the interrelationship between the two Acts. *See id.* Because the Board was not considering matters solely within its expertise, we perceive no reason to defer to the Board's interpretation. Additionally, even if the Board had interpreted provisions of the Railroad Retirement Act exclusively, we are not compelled to defer to the Board's conclusions. Though an agency's interpretation of the statute under which it operates is entitled to some deference, this deference is limited by our responsibility to honor the clear meaning of a statute, as revealed by its language, purpose, and history. *Southeastern Commu-*

---

3. The Board asserts that the taxes assessed for tier I benefits are identical to those taxes assessed under the Social Security Act for benefits pursuant to 42 U.S.C. § 402(f)(1). The additional assessments are for tier II benefits, pursuant to 45 U.S.C. § 231c(g)(1), and no such benefits are available under the Social Security Act.

4. The Eighth Circuit's standard of review is in accord with our circuit with respect to review of the Board's legal conclusions. *See Costello,* 780 F.2d at 1354 ("whether the Board's decision had a reasonable basis in law").

*nity College v. Davis,* 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979); *International Bhd. of Teamsters v. Daniel,* 439 U.S. 551, 566 n. 20, 99 S.Ct. 790, 800 n. 20, 58 L.Ed.2d 808 (1979).

The Board's current interpretation of the Railroad Retirement Act is erroneous. The Act has not been changed since *Costello.* The *Costello* court, in holding that tier I benefits must still be paid to widows with children between the ages of sixteen and eighteen, explicitly stated that if Congress intended a contrary result it can amend the Act to make its intention clear. 780 F.2d at 1356. We agree. Five years have passed, and Congress has yet to make any change to the provision. Consequently, we conclude that tier I benefits must be paid to widows with children under age eighteen. Although the Board's current position may be well-intentioned, its decision to grant tier II benefits to widows whose youngest child is between the ages of sixteen and eighteen is an obvious effort to adhere to *Costello,* yet not pay "full," i.e., tier I and tier II, benefits.[5] As a result, its current position is arbitrary and capricious. We therefore choose to apply the Eighth Circuit's decision in *Costello* to the case before us. Accordingly, we REVERSE the Board's order and REMAND with directions to award to Mrs. Johnson a widow's annuity (i.e., full tier I and II, less any portion of the full tier II payable that she previously might have received) for the time period which began with the termination of her tier I benefits and which ended when her son, Stewart, reached age eighteen.

REVERSED and REMANDED.

---

5. We are perplexed by the Board's current interpretation of the tier II provision in light of its earlier interpretation pre-*Costello.* Counsel never explained in its brief or at oral argument the current interpretation of section 231c(g). Counsel erroneously explained, at oral argument, that tier II was calculated by taking 30 percent of tier I. However, counsel did direct our attention to the Board's legal opinion L–86–112 (R.26) which discussed the Board's position. That opinion recognized that Congress completely changed the method for calculating tier II annuities in 1981. Yet, according to the Board's earlier interpretation of the Act pre-*Costello,* the Board apparently continued to calculate tier II annuities based upon the old law until after the *Costello* case was decided. We fail to understand why the Board would wait nearly five years to "implement" the new method of calculation which they now appear to assert that Congress created back in 1981.