[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-12243

Non-Argument Calendar

_____

JENNIFER CORNETT MANN-MACKEY,
Widower of Carl Mackey, former RRB Employee,

Petitioner,

*versus*

U.S. RAILROAD RETIREMENT BOARD,

Respondent.

_____

Petition for Review of a Decision of the
Railroad Retirement Board
Agency No. 17-AP-0034

_____

Before ROSENBAUM, JILL PRYOR, and LAGOA, Circuit Judges.

PER CURIAM:

Jennifer Cornett Mann-Mackey, proceeding *pro se*, petitions us for review of the United States Railroad Retirement Board's ("RRB") decision that she was not without fault as to an overpayment in the amount of $30,757.59 and, therefore, that waiver of recovery was not warranted. Mann-Mackey argues that she was not required to report the self-employment income because it fell under an exception to the reporting requirements of the Railroad Retirement Act ("RRA"), which were set forth in the forms she was provided when she applied for a spouse annuity. She also argues that recovery of this overpayment would cause financial hardship that would warrant the waiver of recovery. In response, RRB argues that Mann-Mackey was required to report her self-employment income and therefore was not without fault in causing the overpayment. For the reasons discussed below, we deny the petition.

## I.

Jennifer Mann-Mackey was born in 1945, and was married to Carl Mackey, a railroad employee, until his death. Mann-Mackey applied for a spouse annuity with the RRB on April 18, 2005 and the RRB awarded her an annuity beginning July 1, 2005. From 2010 to 2014, Mann-Mackey was overpaid benefits under the RRA.

The Railroad Retirement Act sets the eligibility require-ments that the spouse of a covered railroad annuitant must meet to receive a spouse annuity. 45 U.S.C. § 231a(c). The RRA requires work deductions to be applied to the Tier 1 component of a spouse annuity pursuant to the Social Security Act in the same manner as if the component were a benefit under the Social Security Act. 45 U.S.C. § 231a(f)(2); 42 U.S.C. § 403. The Social Security Admin-istration ("SSA") promulgated regulations implementing the an-nual exempt amount. 42 U.S.C. § 403 (providing detailed criteria for reduction of social security insurance benefits based on, inter alia, the individual's wages and self-employment income); 20 C.F.R. § 404.430 (defining monthly and annual exempt amounts and defining excess earnings). Section 2(f)(1) of the RRA requires that any person receiving an annuity that is subject to these work deductions report to the RRB the receipt of "excess earnings." 45 U.S.C. § 231a(f)(1).

If the RRB finds that, at any time, more than the correct amount of annuities or other benefits has been paid to an individ-ual, recovery by adjustment may be made. 45 U.S.C. § 231i(a). There are, however, exceptions in which the RRB will not recover overpayments. Section 231i(c) provides that "[t]here shall be no recovery in any case in which more than the correct amount of an-nuities or other benefits has been paid under this under this sub-chapter to an individual or payment has been made to an individual not entitled thereto who, in the judgment of the Board, is without fault when, in the judgment of the Board, recovery would be con-trary to the purpose of this subchapter or the Railroad

Unemployment Insurance Act or would be against equity or good conscience." *Id.* § 231i(c). The RRB "shall establish and promulgate rules and regulations to provide for the adjustment of all controversial matters arising in the administration of this subchapter." *Id.* § 231f(b)(5).

The RRB's regulations provide for this same waiver of recovery, stating that there shall be no recovery of any overpayment if in the judgment of the RRB: (a) the overpaid individual is without fault, and (b) recovery would be contrary to the purpose of the RRA or would be against equity or good conscience. 20 C.F.R. § 255.10(a)-(b). The purpose of the RRA is to pay retirement and survivor annuities and other benefits to eligible beneficiaries. *Id.* § 255.12. "It is contrary to the purpose of the [RRA] for an overpayment to be recovered from income and resources which the individual requires to meet ordinary and necessary living expenses." *Id.* However, if income, resources, or a combination thereof, are sufficient to meet such expenses, then recovery of an overpayment is not contrary to the purpose of the RRA. *Id.* "Recovery is considered to be against equity or good conscience if a person, in reliance on payments made to him or her on notice that payment would be made, relinquished a significant and valuable right . . . or changed his or her position to his or her substantial detriment . . . ." 20 C.F.R. § 255.13(a). However, "[a]n individual's ability to repay an overpayment is not material to a finding that recovery would be against equity or good conscience but is relevant with respect to the credibility of a claim of detrimental reliance . . . ." *Id.* § 255.13(b).

Before recovery of an overpayment may be waived, it must be determined that the overpaid individual was without fault, and fault is defined as "a defect of judgment or conduct arising from inattention or bad faith." *Id.* § 255.11(a), (b). "Judgment or conduct is defective when it deviates from a standard of reasonable care taken to comply with the entitlement provisions of this chapter. Conduct includes both action and inaction." *Id.* § 255.11(b). In determining fault, the RRB also considers all of the circumstances surrounding the overpayment, including: "the ability of the overpaid individual to understand the reporting requirements of the Railroad Retirement Act or to realize that he or she is being overpaid (e.g., age, education, comprehension, physical and mental condition); the particular cause of non-entitlement to benefits; and the number of instances in which the individual may have made erroneous statements." *Id.* § 255.11(c).

Circumstances in which the RRB will find an individual at fault include, but are not limited to: (1) failure to furnish the RRB information which the individual knew or should have known to be material; (2) an incorrect statement made by the individual which he or she knew or should have known was incorrect; and (3) failure to return a payment which the individual knew or should have known was incorrect. *Id.* § 255.11(d)(1)(i)-(iii). If any of those circumstances has occurred, the individual shall be presumed to be not without fault, but this presumption may be rebutted by presentation of evidence by the individual. *Id.* § 255.11(d)(2). Further, for the purposes of (d)(1)(i), furnishing information to the Social Security Administration or any other agency shall not be considered to

constitute furnishing information to the RRB.  *Id.* § 255.11(d)(3). An error on the part of the agency does not extinguish fault on the part of the individual.  *Id.* § 255.11(d)(4).  As relevant, the RRB will find an individual not at fault if the overpayment is the result of RRB error of which the overpaid individual was not aware and could not reasonably have expected to be aware.  *Id.* § 255.11(e)(1).

As part of her application for annuity benefits, she certified that she had "received and reviewed the booklets RB-30 Spouse Annuity and RB-9 Employee and Spouse Annuities – Events that Must be Reported" ("Form RB-30" and "Form RB-9," respectively) and that she understood that she was responsible for reporting events that would affect her annuity.  She also agreed to immediately notify the RRB if she earned over the annual earnings exempt amount.  Along with her application, Mann-Mackey submitted a signed "Self-Employment and Substantial Service Questionnaire," where she listed herself as a sole proprietor of a business and a professional counselor.  She stated that she began providing services on November 1, 1997, and confirmed that the payments she received for those services were reported to the Internal Revenue Service ("IRS").

Form RB-30 provided, in relevant part, that earnings from nonrailroad employment, including self-employment, after an annuity began could cause work deductions.  The form also provided that if the applicant worked for an incorporated business that the applicant owned, the RRB did not consider that work self-employment.  The form explained that railroad retirement annuities are

calculated under a two-tier formula, with Tier 1 being based on railroad retirement credits and social security credits the employee has acquired and Tier 2 being based on railroad retirement credits only. The form described the Tier 1 annuity deductions, which provided that earnings from any nonrailroad employment, including self-employment, over the annual earnings exempt amount could cause work deductions to the spouse annuity Tier 1 component. It also described the Tier 2 component work deductions, which required employee annuitants to report earnings from their own "Last Pre-Retirement Nonrailroad Employer (LPE)," defined as "any nonrailroad individual, company or institution for whom you are working on the date your spouse annuity begins or for whom you stopped working in order to receive an annuity." Earnings from self-employment or other non-railroad employment were not added to LPE earnings when computing Tier 2 component work deductions.

Form RB-9 provided that whether a person was receiving their own annuity or payments on behalf of another person, it was the receiver's responsibility to be aware of events that could affect their annuity and notify the RRB immediately if any of the relevant events occurred. The form further provided that "[f]ailure to promptly notify the RRB usually constitutes 'fault' on your part that requires you to repay any resulting overpayment." Form RB-9 described how Tier 1 earnings restrictions apply to gross earnings from employment for others, as well as any net earnings from self-employment, and how the net self-employment amount was the

earnings amount after business expenses that were reported to the IRS. As to Tier 2, Form RB-9 provided a list of various LPE Exceptions that did not affect payment of the annuity, which included "[w]ork as member (owner) of a Limited Liability Corporation (LLC)" and "self-employment."

In a July 1, 2005, letter, Mann-Mackey was awarded a spouse annuity of $1,323.81 to begin on the same date. The Tier 1 component of the annuity was $825.00, and the Tier 2 component was $498.81. From 2010 through 2014, the annual earnings exempt amounts were $14,160, $14,160, $14,640, $15,120, and $15,480, respectively. From 2010 through 2014, Mann-Mackey earned thousands of dollars above the exempt amount, making $61,843, $46,865, $37,102, $69,920.37, and $76,940.56, respectively. The RRB's contact log reveals no record of Mann-Mackey contacting the board reporting those earnings or inquiring about the reporting requirements.

On December 18, 2014, the RRB sent Mann-Mackey a letter that stated that, after reviewing her annuity rates, it had determined that she was paid $30,757.59 more in railroad retirement benefits than to which she was entitled. The RRB based its finding on reported earnings from the Social Security Administration ("SSA") for years 2010, 2011, 2012, and 2013. The RRB stated it had temporarily adjusted Mann-Mackey's annuity to deduct $666.00 effective with her next payment, based on her estimated earnings of $54,934.37 for 2014. The RRB also applied a penalty deduction of $655.00 because she had failed to timely report her earnings. The

RRB stated that it would release an annual benefit information statement of her previous yearly railroad retirement payments, in the form of a Form RRB-1099 and that she could fill out a form to request her rights regarding her annuity rate change and the amount of the current overpayment.

Mann-Mackey subsequently submitted a Rights Request Form, requesting a review of the facts and a waiver consideration, a personal conference, and a good-cause determination for the late report of earnings. She also attached a letter to the form, in which she stated that she failed to report her personal earnings for October 2012 to the then-present 2015 because she did not know, and did not remember, that she had to. She specifically requested that her W-2 earnings for 2010 and 2011 be reviewed, as they showed that she received no personal income from her services as a provider for Wayne Behavioral Health because she never received a salary. She then described the "grave economic hardship" that this repayment would create for her family. She provided her husband's income, her income, and the monthly household expenses for review and stated that neither her, nor her husband, would be able to obtain additional employment to offset the repayment. She concluded by asking the RRB to "take [her] ignorance of the railroad system, as the reason for not reporting," and by stating she did not fully understand that she should have been reporting her personal income.

The RRB's Reconsideration Section prepared a summary of facts, which provided the following. The December 18, 2014, letter

to Mann-Mackey was incorrect and that the actual amount of her overpayment was $40,260.72, noting that when her original overpayment was computed, the Tier 2 work deductions were not applied in 2005 and 2006, and that the Tier 1 work deductions were not applied to her annuity rates from January through November 2010.

A personal conference between the RRB and Mann-Mackey was held telephonically on November 16, 2015. An internal memorandum related to the conference recommended that the RRB proceed with the recovery of the debt. After the telephonic conference, and in anticipation of the decision by the RRB's Debt Recovery Division, Mann-Mackey submitted a financial disclosure statement, which provided information about her dependents, her monthly income, the monthly household income, details of other debts, and a summary of assets.

Then, in a March 24, 2016, letter, the RRB denied Mann-Mackey's request for a waiver. The RRB stated that she was originally told the overpayment was $30,757.59, but the correct amount was $40,260.72. After deducting an accrual in the amount of $666.00, the repayment required was $39,594.72. The RRB stated that if she disagreed with either this decision or the summary of facts prepared for the personal conference held on November 16, 2015, she had the right to appeal to the RRB's Bureau of Hearings and Appeals. Attached to this letter was the full decision, which summarized the procedural history and provided a summary and evaluation of the evidence, including quotes from the relevant

sections of Form RB-30 and Form RB-9.  The Debt Recovery Division found that Mann-Mackey had been furnished with sufficient materials to put her on notice that she was supposed to report earnings over the exempt amount every year and that, because she had not done so, the RRB was not able to determine if excess earnings and LPE work exceptions applied.  It concluded that, because she was found to be not without fault, her financial situation could not be considered to prevent recovery of the overpayment.

On May 31, 2016, Mann-Mackey appealed that decision, arguing that, according to Form RB-9, her self-employment and ownership of a registered LLC qualified as an LPE exception.  She asserted that the payments were made to her company, rather than to herself personally, and attached her company's articles of organization, her contracts with various clients through the years 2010 to 2016, her business license, professional license, and letters of communication with insurance companies.  She also requested the RRB to review the documentation of Form RRB-1099s she provided previously, as she had attempted to explain that certain income was medical payments to her LLC, and not her directly, although she was listed as the provider.

Then, on July 26, 2016, Mann-Mackey received a letter from the RRB's Bureau of Hearings and Appeals.  The letter stated that the issue in her appeal was whether the overpayment in the amount of $39,594.72 could be waived under § 10(c) of the RRA, which permitted waiver if both (1) the overpaid person could be found without fault in causing or accepting the overpayment and

(2) recovery of the overpayment would deprive the individual of funds needed for ordinary and necessary living expenses or would be against equity or good conscience.

At a March 8, 2017, hearing, Mann-Mackey confirmed that she wished to proceed without an attorney and testified to the following. She had a doctorate, and her current occupation was a military consultant. She was aware that her spouse annuity with the RRB was subject to an earnings limitation but did not know the difference between Tier 1 and Tier 2. It was her understanding that she had the responsibility to inform the RRB of any event, such as earning over the annual earnings limitations, if she was a wage employee. She explained that she had been self-employed until 2013, and, when she signed her application in 2005, she was told that there would be periodic monitoring of her income, yet she was notified for the first time in 2014. Mann-Mackey filled out her spouse annuity application in person, and the person that helped her fill it out went over it with her. She also signed the self-employment questionnaire.

In response to a question from the hearings officer about her wage record for the Wayne County Board of Education, Mann-Mackey stated that she was not an employee of that board but was, rather, an elected official from January 1, 1999, through December 31, 2006. She disputed that the earnings she received in 2005 and 2006 from the board were employment earnings. She claimed that the earnings she reported for 2010 to 2012 were self-employment, as she did not become a wage employee until 2013. Mann-Mackey

received the Form RB-30 and Form RB-9 but had not read or reviewed them afterwards nor looked at them since 2005. She was also not aware that earnings from any non-railroad employment, including self-employment, over the annual earnings exempt amount could cause work deductions to her spouse annuity under Tier 1. Until 2014, she only received annual earnings statements from the RRB. And she did not report her earnings to the RRB for the years 2010 to 2014.

Mann-Mackey stated that she did not willfully fail to report but instead failed to do so because she did not remember she had to report, based on instructions she had received back in 2005. She read the LPE exceptions and believed that her work fell under those exceptions because the income was not paid directly to her as wages, but rather, because she was the sole owner of an LLC. She reiterated that she did not think she had to report self-employment earnings.

As to her current financial situation, Mann-Mackey noted her tax return, which was entered into the record, showed that her family had a loss of over 50 percent of their income, totaling about $71,000. Mann-Mackey and the hearings officer reviewed her current total family income and household expenses, with the total expenses coming out to $11,389, with Mann-Mackey still being short $2,000 every month. Mann-Mackey then described how collection would affect her household financially. In her closing statement, she did not deny that the RRB told her in 2005 that she

needed to report her income but stated that she just did not re-member.

On March 28, 2017, the RRB hearings officer issued a deci-sion, determining that Mann-Mackey received a net overpayment of $39,506.72 and that the RRB's right to recover that amount could not be waived.  But the hearings officer found that the penalty de-duction of $655.00 could be removed, as Mann-Mackey's earnings had been reported on the wage record obtained from the SSA.  Af-ter reviewing the evidence of her earnings, the hearings officer found that the record showed that Mann-Mackey had been fur-nished with sufficient material to put her on notice that earnings over a certain amount would result in a deduction from the bene-fits payable to her.  The officer further found that the information given to Mann-Mackey clearly stated that earnings from self-em-ployment over the annual earnings exempt amount could cause work deductions to her spouse annuity Tier 1 component.  The officer determined that Mann-Mackey was provided with infor-mation regarding work deductions for her last pre-retirement non-railroad employer, and those deductions did not include earnings for work in an elected position.  The officer found that nothing in the testimony or administrative record showed that Mann-Mackey did not or could not understand the earnings limitation placed on her annuity.  And because she failed to exhibit a reasonable amount of care in monitoring her earnings and the effects they would have on her annuity, the hearings officer found that she was not without fault.  Therefore, because she could not satisfy the first condition

for waiver of the overpayment, her financial situation could not be considered to prevent recovery, and recovery of the overpayment could not be waived under § 10(c) of the RRA. Mann-Mackey appealed this decision, stating that she would submit additional evidence, e.g., revised IRS tax returns, that would reflect that the income should not have been in her personal IRS data.

On July 15, 2021, the RRB issued its decision. The RRB noted that it had not received any amended tax returns from Mann-Mackey. The RRB agreed with the hearings officer that (1) she was not without fault in causing the $30,757.59 overpayment attributable to her self-employment earnings from 2010 to 2013 because she had been informed of that reporting requirement, and (2) the $655 penalty should not be applied because she had reported the earnings in question to the SSA. The RRB noted that Form RB-30 stated that net earnings from self-employment must be reported and may cause work deductions. Thus, the RRB found, her argument that her earnings were business income, rather than personal income, did not affect the finding that the earnings were due to substantial services that she had rendered to her LLC and, thus, were subject to the work deductions under § 203 of the Social Security Act, as incorporated by § 2(f)(2) of the RRA. The RRB therefore found that her failing to report significant earnings from self-employment as a consultant deviated from the standard of care that a reasonable person would have exercised, such that she was not without fault in causing the 2010 to 2013 overpayment. However, the RRB reversed the portion of the hearing officer's decision as to the 2005 to

16                    Opinion of the Court                    22-12243

2006 overpayment,[1] finding that Mann-Mackey was without fault in causing the $8,843.13 overpayment related to her service as an elected official in 2005 and 2006. The RRB found that recovery of that overpayment would be contrary to the purposes of the RRA because recovery would deprive Mann-Mackey of income and resources required to meet ordinary and necessary living expenses.

Accordingly, the RRB granted waiver of recovery of the 2005 to 2006 overpayment in the amount of $8,848.13 and denied waiver of recovery of the 2010 to 2013 overpayment in the amount of $30,757.59. In other words, Mann-Mackey's appeal was granted in part and denied in part.

Mann-Mackey then petitioned this Court for review.[2]

## II.

We have jurisdiction to review RRB decisions pursuant to section 8 of the RRA, codified as amended at 45 U.S.C. § 231g, which incorporates by reference the provisions pertaining to

---

[1] A majority of the RRB supported the reversal, but the Management Member of the RRB dissented.

[2] During this appeal, the RRB filed a supplemental appendix, in which it provided an October 20, 2022, decision regarding the payment at issue. This decision explained that the RRB had discovered an error in the computation of the overpayment and that the correct calculation would have increased the amount Mann-Mackey was liable to pay. The RRB, on its own motion, considered whether to reopen the July 15, 2021, decision, and a majority of the RRB voted against reopening the case. Therefore, the overpayment amount at issue is the amount provided for in the July 15, 2021, decision—$30,757.59.

judicial review set forth in section 5(f) of the Railroad Unemployment Insurance Act, codified as amended at 45 U.S.C. § 355(f). *Johnson v. U.S. R.R. Ret. Bd.*, 925 F.2d 1374, 1376 (11th Cir. 1991). We will affirm the RRB if its factual findings are supported by substantial evidence and its decision is not based upon an error of law. *Id.* While we are bound by the RRB's findings of fact if they are supported by substantial evidence, we are not bound in determining the correctness of the RRB's legal conclusions. *Id.*

Here, substantial evidence supports the RRB's findings that Mann-Mackey was provided with sufficient information such that she should have known she needed to report her earnings above the annual exempt amount and that, therefore, she was not without fault for the overpayment, such that a waiver of recovery was not warranted. We find Mann-Mackey's argument that she was not required to report her self-employment income unavailing. Mann-Mackey, an educated individual with a doctorate, certified that she had reviewed Form RB-30 and Form RB-9 when she filled out her application. And the forms provide that her self-employment income could cause deductions to the Tier 1 component of her annuity. Further, the application for annuity benefits provided that Mann-Mackey must immediately notify the RRB if she earned over the annual earnings exempt amount. Therefore, these materials provided Mann-Mackey with notice as to the reporting requirements. And, as she testified, she did not review the forms nor had looked at them since 2005. *See* § 255.11(b). As such, we will

not disturb the RRB's conclusion that Mann-Mackey was not without fault.

Accordingly, we deny Mann-Mackey's petition for review.

**PETITION DENIED.**